Timothy B. Del Castillo (SBN: 277296)
tdc@castleemploymentlaw.com
Kent L. Bradbury (SBN: 279402)
kb@castleemploymentlaw.com
**CASTLE LAW: CALIFORNIA EMPLOYMENT COUNSEL, PC**
2999 Douglas Blvd, Suite 180
Roseville, CA 95661
Telephone: (916) 245-0122

Attorneys for Plaintiff RANA MUSHARBASH

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANA MUSHARBASH, individually and on behalf of all others similarly situated, Plaintiff,<br><br>vs.<br><br>JPMORGAN CHASE BANK; DOES 1 to 20, inclusive,<br><br>Defendants. | Case No.  2:22-cv-02320-DAD-KJN<br><br>**PLAINTIFF'S NOTICE OF NEW AUTHORITY IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Assigned to Hon. Dale A. Drozd<br><br>Action Filed:  September 12, 2022<br>Removed: December 30, 2022 |

In support of Plaintiff Rana Musharbash's ("Plaintiff") Opposition to Defendant JPMorgan Chase Bank's ("Defendant") Motion to Compel Arbitration (Dkt. No. 12), Plaintiff respectfully submits this notice of new authority, following the California Court of Appeal, Fourth Appellate District's decision in *Suarez v. Rudolph & Sletten, Inc.*, No. D082429, 2024 WL 188863 (Cal. Jan. 18, 2024). A copy of the Court's decision in *Suarez* is attached as **Exhibit A**.

### I. BACKGROUND

On July 8, 2022, pursuant to the arbitration agreement she entered into with Defendant, Plaintiff filed a demand for arbitration. However, Defendant waived and forfeited its right to enforce the arbitration agreement by failing to timely pay the fees requested by the arbitrator. (California Code of Civil Procedure § 1281.97). Consequently, on September 12, 2022, Plaintiff filed a civil complaint in Solano County Superior Court. On December 30, 2022, Defendant had this case removed to this Court. On April 18, 2023, Plaintiff filed a Status Report in advance of the May 3, 2023 Pretrial Scheduling Conference. On April 19, 2023, Defendant filed a Status Report, wherein they informed the Court they intended to file a Motion to Compel Arbitration. (Dkt. No. 7).

Following the filing of both parties' Status Reports, the court set a hearing on Defendant's Motion to Compel Arbitration. (Dkt. No. 10). On May 3, 2023, Defendant filed their Motion to Compel Arbitration. (Dkt. No. 11). On May 11, 2023, Plaintiff opposed Defendant's Motion on the grounds that Defendant did not remit their arbitration fees pursuant to the statutorily provided timeframe. (Dkt. No. 12). On June 30, 2023, the Court issued an Order taking Defendant's Motion under submission and vacating the hearing on Defendant's Motion. (Dkt. No. 14).

### II. CALIFORNIA COURT OF APPEAL'S DECISION IN *SUAREZ*

On January 24, 2024, the California Courts of Appeal, Div. One of the Fourth Appellate District issued its decision in *Suarez*, holding that an employer has waived its right to have an employee's wage-and-hour action resolved through arbitration by not paying the fee charged to it by the arbitration service within thirty days of the invoice being emailed to it.

**PLAINTIFF'S NOTICE OF NEW AUTHORITY**

Dated: February 20, 2024                **Castle Law: California Employment Counsel, PC**


                              By:   /s/ Kent L. Bradbury
                                    Timothy B. Del Castillo
                                    Kent L. Bradbury
                                    Attorneys for Plaintiff

**PLAINTIFF'S NOTICE OF NEW AUTHORITY**

# EXHIBIT A

Filed 1/24/24

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ONECIMO SIERRA SUAREZ, | D082429 |
| Petitioner, | |
| v. | (Super. Ct. No. 37-2022-00000615-CU-OE-CTL) |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | |
| Respondent; | |
| RUDOLPH & SLETTEN, INC., | |
| Real Party in Interest. | |

ORIGINAL PROCEEDING in mandate.  Kenneth J. Medel, Judge. Petition granted.

Moon Law Group, Kane Moon, Allen Feghali, and Edwin M. Kamarzarian, Attorneys for Petitioner.

Nida & Romyn, Robert Nida, Matthew J. Luce, and William Schubert, Attorneys for Real Party in Interest.

No appearance for Respondent.

Concerned with the fairness of adhesion contracts in the consumer and employment context that require the arbitration of disputes, beginning in 2019 the Legislature enacted protections against delays in the arbitration process as a result of businesses and employers failing to pay the necessary fees before the arbitration can proceed.  (Stats. 2019, ch., 870 (Sen. Bill No. 707) § 1.)  Amendments to these statutes in 2021 (Stats. 2021, ch. 222 (Reg. Sess. 2021–2022)) "obligate a company or business [that] drafts an arbitration agreement to pay its share of arbitration fees by no later than 30 days after the date they are due, and specify that the failure to do so constitutes a 'material breach of the arbitration agreement.' " (*Gallo v. Wood Ranch USA, Inc.* (2022) 81 Cal.App.5th 621, 629 (*Gallo*).)  A material breach waives the contractual right to arbitration and the consumer or employee is permitted to litigate the dispute in court if he or she so chooses.

After plaintiff Onecimo Sierra Suarez sued his employer for alleged wage and hour violations, the employer successfully moved to stay the court action and proceed to arbitration as provided in the employment agreement that the employer drafted.  When the employer waited more than 30 days to pay its share of the arbitrator's initial filing fee, Suarez unsuccessfully moved to vacate the arbitration stay.  He now seeks writ relief directing the trial court to find that the employer has waived its right to arbitration pursuant to Code of Civil Procedure sections 1281.97 et seq.[1]  We agree and grant the petition.

---

[1]     Undesignated statutory references are to the Code of Civil Procedure unless otherwise indicated.

## FACTUAL AND PROCEDURAL BACKGROUND

Suarez is the plaintiff in a pending civil action in San Diego Superior Court.  His claim asserts wage and hour violations against his former employer, defendant and real party Rudolph & Sletten, Inc. (R&S).  In late October 2022, on R&S's motion, the superior court stayed the action and ordered the parties to arbitration.  Then, in accordance with that order, Suarez filed his demand for arbitration, initiating the arbitration proceeding.

Less than a month later, on December 2, 2022, the arbitration provider, JAMS, Inc.[2] issued an e-mail invoice for the initial filing fee to Suarez and R&S marked, "due upon receipt."  The total fee due was $1,750, allocated $400 to Suarez and $1,350 to R&S.  Though it was not required, JAMS followed up on December 19, 2022 to request a status of payment.  It is undisputed that R&S did not pay its share of the JAMS invoice until January 4, 2023.

Within the next two weeks both parties filed competing motions in the superior court.  R&S sought to compel compliance with the court's earlier arbitration order, while Suarez filed a motion to vacate the stay of his civil action.  Suarez contended that R&S had waived its right to arbitrate the dispute by failing to pay its share of the arbitration filing fee within 30 days as required by section 1281.97.  R&S disagreed, asserting that it had until the close of business on January 5, 2022 to pay the invoice, making its January 4 payment timely.  While conceding that its payment would normally have been due on January 1, 2023—30 calendar days after December 2, 2022—R&S argued that sections 12 and 1010.6 operated in tandem to *extend* the due date until January 5.  The superior court agreed

---

2        JAMS stands for Judicial Arbitration and Mediation Services.

3

with R&S, granting the motion to compel compliance with the existing arbitration order and denying Suarez's motion to lift the stay.  We issued an order to show cause to review this issue of first impression.

## DISCUSSION

The nub of this dispute is the calculation of a statutory deadline for payment of arbitration filing fees, and whether any failure to meet that deadline constituted a material breach of the arbitration agreement.  The superior court determined that the statutory deadline prescribed by section 1281.97 was extended by operation of other unrelated statutes such that R&S made timely payment.  R&S seeks to defend the court's reasoning, but also argues that even if it missed the deadline, for various other reasons it was not in material breach of the arbitration agreement.

A.   *The grace period for payment of arbitration fees by R&S was not extended to January 5, 2023.*

The Legislature enacted sections 1281.97 and 1281.98, recognizing that a " 'company's failure to pay the fees of an arbitration provider' " in a timely manner " 'hinder[ed] the efficient resolution of disputes and contravene[d] public policy.' "[3]  (*De Leon v. Juanita's Foods* (2022) 85 Cal.App.5th 740, 750 (*De Leon*).)  Section 1281.97 requires that the provider transmit an invoice to the parties specifying "the full amount owed and the date that payment is due," generally indicating the invoice is "due on receipt."  (*Id.*, subd. (a)(2).)

---

[3]    The primary difference between sections 1281.97 and 1281.98 is that "section 1281.97 concerns a failure to timely pay 'the fees or costs to *initiate*' an arbitration proceeding," whereas "section 1281.98 concerns a failure to timely pay 'the fees or costs required to *continue*' an arbitration proceeding." (*De Leon, supra,* 85 Cal.App.5th at p. 750, quoting §§ 1281.97, subd. (a)(1), 1281.98, subd. (a)(1).)  Because this case focuses on initial fees, we will refer primarily to section 1281.97.

4

It also allows a grace period for payment of "30 days after the due date."
(*Id.*, subd. (a)(1).)

      This legislation was aimed at a very specific problem—the "procedural
limbo and delay workers and consumers face when they submit to
arbitration, pursuant to a mandatory arbitration agreement, but the
employer fails or refuses to pay their share of the arbitration fees." (Assem.
Com. on Judiciary, Analysis of Sen. Bill No. 707 (2019–2020 Reg. Sess.) as
amended May 20, 2019, p. 11 (Assembly Report).)  Prior to the enactment,
state law did "not provide clear guidance for courts and litigants in the event
a drafting party fails to properly pay to commence arbitration in a timely
manner."  (*Id.*, at p. 6.)  "That problem was fixed with the 'material breach
and sanction provisions' of the statute, which constitute a 'strict yet
reasonable method to ensure the timely adjudication of employee and
consumer claims that are subject to arbitration.' "  (*De Leon, supra,* 85
Cal.App.5th at p. 757, quoting Assembly Report, at p. 9; see also *Doe v.
Superior Court* (2023) 95 Cal.App.5th 346, 357 (*Doe*).[4])

      R&S does not take issue with the Legislature's intent that the time
limits in section 1281.97 be strictly enforced.  Rather, it contends that two
different provisions of the Code of Civil Procedure operated to extend the 30-

---

[4]     The overriding moral of this story may be to pay your bills on time.
As the *Doe* court explained, "One of the Legislature's main objectives was to
deter employers from strategically withholding payments of arbitration fees
so that they could no longer stymie the ability of employees to assert their
legal rights.  To do this, the Legislature established strict breach provisions
for nonpayment . . . .  *Any* untimely payment constituted a material breach
regardless of the circumstances or status of the arbitration proceedings."
(*Doe, supra, s*95 Cal.App.5th at p. 357.)  Moreover, the statutes contemplate
that "such breaches [will be] strictly enforced."  (*Ibid.*)

day grace period.  Agreeing that the invoice due date in this case was December 2, 2022, it first relies on section 12, which has the effect of extending certain deadlines that fall on a holiday.[5]  By R&S's calculation, because 30 days from December 2, 2022 would be January 1, 2023, and because both January 1 and 2 were holidays, the grace period for payment was extended to January 3.

R&S then seeks to tack on an additional two days based on section 1010.6, which deals with the electronic service of documents.  The first sentence of the section provides that "[a] document may be served electronically in an action filed with the court as provided in this section." (*Id.*, subd. (a).)  If such a document "may be served by mail, express mail, overnight delivery, or facsimile transmission, [then] electronic service of that document is deemed complete at the time of the electronic transmission of the document or at the time that the electronic notification of service of the document is sent."  (*Id.*, subd. (a)(3)(A).)  At the same time, "any right or duty to do any act or make any response within any period . . . shall be extended after service by electronic means by two court days . . . ."  (*Id.*, subd. (a)(3)(B).)

It is this latter provision that R&S focuses on.  It claims that the two-day extension provided for by subdivision (a)(3)(B) of section 1010.6 is added at the end of the section 12 extension to yield a revised deadline for the payment of arbitration fees of January 5, 2023.  Because R&S made its payment to JAMS on January 4, it asserts the payment was timely.

---

[5]     Section 12 provides:  "The time in which any act provided by law is to be done is computed by excluding the first day, and including the last, unless the last day is a holiday, and then it is also excluded."

We will assume without deciding that section 12 could potentially apply to extend the time for R&S's payment of arbitration fees *if* the deadline for payment fell on a "holiday."  Even so, the major problem with R&S's argument is that section 1010.6 simply does not apply to the e-mail transmission of a JAMS fee invoice.[6]  By its terms, the statute governs the *service* of documents *in an action filed with the court.*  An arbitration proceeding is not "an action filed with the court," and the invoice required by section 1281.97 is "provided" to the parties but is not "served."

That an arbitration proceeding is not a court action is axiomatic. Private arbitration exists as an *alternative* to resolving disputes in the public court system.  (See *Berglund v. Arthroscopic & Laser Surgery Center of San Diego, L.P.* (2008) 44 Cal.4th 528, 539.)  Indeed, the parties' agreement drafted by R&S expressly reflects this understanding, stating that "[b]oth [R&S] and [Suarez] understand that by using arbitration to resolve disputes they are giving up any right that they may have to a judge or jury trial with regard to all issues concerning employment."  It goes on to explain that the "cost of the arbitrator and other incidental costs of arbitration *that would not be incurred in a court proceeding* shall be borne by [R&S]." (Italics added.)

---

[6]    R&S relies on language in the arbitration agreement that it claims "adopted the Code of Civil Procedure for a broad set of activities and motion practice" to suggest that incorporation of section 1010.6 was necessarily implied.  But the language it cites is specific, incorporating the "California rules of civil procedure relating to pleading, . . . evidence, motions for summary judgment, judgment on the pleadings and judgment under Code of Civil Procedure Section 631.8."  This enumerated list appears to be exhaustive rather than illustrative.  There is no reason to think the arbitration agreement contemplated the inclusion of other, unspecified rules and procedures.  In any event, an arbitration invoice is not even reasonably related to the subjects of pleading, evidence, motions for summary judgment, judgment on the pleadings or judgment under section 631.8.

7

In characterizing the arbitration agreement as an *alternative* to the use of a judicial forum, and in agreeing to cover the costs of an arbitration conducted *in lieu of* a court proceeding, R&S drew a stark line of delineation between arbitration and an action filed with the court.  Section 1010.6 applies only to the latter.

Moreover, as we have noted, section 1010.6 governs the electronic *service* of documents.  "Service" is a legal term of art.  (See generally *Sheppard v. Lightpost Museum Fund* (2006) 146 Cal.App.4th 315, 323.) Typically, it involves sending service *copies* of documents filed with the court to opposing parties in the litigation.  Even if the service procedures of section 1010.6 somehow extended to arbitrations in general, the document that R&S seeks to apply it to is not something that is "served."  It is an invoice—a bill for anticipated services—that governs the economic relationship between the provider and the parties.  It is not a document filed with the court or, by analogy, the arbitrator.  Nothing in section 1281.97 (or elsewhere in the California Arbitration Act (CAA)) says anything about the arbitration provider "serving" the invoice on the parties.  The statute merely requires the provider to "immediately *provide* an invoice for any fees and costs . . . to all the parties to the arbitration."  (§ 1281.97, subd. (a)(2).)

B.   *Section 1281.97 does not make a material breach by the employer contingent on any payment by the employee.*

R&S argues that because Suarez did not pay his portion of the initial arbitration fees, he never properly "initiate[d] an arbitration" within the meaning of subdivision (a)(2) and section 1281.97 therefore does not apply. But by its express terms, the statute contemplates the employee complying with certain "filing requirements" to initiate the arbitration *before* the provider is obligated to send an invoice.  Necessarily, then, the arbitration is

"initiated" before any fees are paid.  Moreover, as we have already discussed, the focus of section 1281.97 is unmistakably on employers and not employees. (*Doe, supra*, 95 Cal.App.5th at p. 357 [statutory purpose is to "deter *employers* from strategically withholding payments of arbitration fees" (italics added.)].)  The plain language of the statute does not say anything about Suarez's payment and does not create penalties for employees who do not pay their share of the arbitration fees.  Instead, it focuses exclusively on the obligations of the drafter of the arbitration agreement, in this case R&S. The drafter is the "business or company that pushed the case into an arbitral forum" and, historically, burdened a consumer or employee with " ' "the procedural limbo and delay" ' " the Legislature sought to address.  (*Gallo, supra*, 81 Cal.App.5th at p. 634.)

In the matter before us, R&S wanted to compel the resolution of Suarez's dispute in arbitration.  It sought to accomplish this by removing the dispute from the public court system and transferring it to the arbitral forum. When it failed to pay its share of the arbitration fees before the expiration of the grace period, it created the exact problem the Legislature sought to avoid when it enacted sections 1281.97 and 1281.98.  Now faced with the consequences of its tardiness, R&S improperly attempts to shift the burden back to its employee, giving rise to further "procedural limbo and delay." (Assembly Report, *supra,* p. 11.)

C.   *The Federal Arbitration Act does not preempt section 1281.97.*

Finally, R&S argues we cannot disturb the trial court's ruling because section 1281.97 is preempted by the Federal Arbitration Act (FAA).  It relies on the FAA's equal treatment principle, asserting that although a court can invalidate an arbitration agreement based on normal state law contract rules, it cannot do so by resort to rules that " 'apply only to arbitration or that

derive their meaning from the fact that an agreement to arbitrate is at issue.' " (*Viking River Cruises, Inc. v. Moriana* (2022) 142 S.Ct. 1906, 1917.)

Two recent decisions from our colleagues in the Second Appellate District have rejected a nearly identical argument. (*Gallo, supra,* 81 Cal.App.5th at pp. 635–646; *Espinoza v. Superior Court* (2022) 83 Cal.App.5th 761, 778–779.) In *Gallo,* the arbitration agreement incorporated the "procedural provisions" of the CAA, including section 1281.97. The employer nonetheless argued that section 1281.97 was preempted by the FAA. The lynchpin of *Gallo*'s analysis is that "a state law will not be preempted by the FAA *merely because* it is arbitration specific." (*Gallo,* at p. 638.) Instead, state law is preempted only where it: (1) outright prohibits the formation or enforcement of arbitration agreements, or (2) imposes requirements on arbitration agreements that "discourage their formation or enforcement." (*Id.* at pp. 637–638.) As the *Gallo* court explained, section 1281.97 does neither of these things. (*Id.* at p. 641.) It merely specifies arbitration-specific procedural rules for the payment of fees. And " '[t]here is no federal policy favoring arbitration under a certain set of rules.' " (*Id.* at p. 639, quoting *Volt Info. Sciences v. Leland Stanford Jr. U.* (1989) 489 U.S. 468, 476.) Accordingly, states properly enact laws "that define the standard rules 'governing the conduct of arbitration.' " (*Ibid.*) "Indeed, specific provisions of the CAA have been upheld as not preempted by the FAA, even though those provisions are necessarily arbitration specific." (*Gallo,* at p. 639.)

In *Espinoza*, the parties' arbitration agreement did not expressly incorporate the procedural provisions of the CAA. The appellate court nonetheless held they " 'apply in California courts by default.' " (*Espinoza, supra,* 83 Cal.App.5th at p. 786, quoting *Valencia v. Smyth* (2010) 185

10

Cal.App.4th 153, 174.)  Relying on the preemption analysis in *Gallo,* Espinoza concluded that section 1281.97 is not preempted by the FAA. (*Espinoza,* at pp. 780–785.)

As in *Gallo,* R&S elected to fully incorporate the CAA, inclusive of section 1281.97, within the arbitration agreement.  Notably, the arbitration agreement was executed *after* the CAA expanded to include section 1281.97. R&S opted into these specific rules of arbitration in lieu of resolving Suarez's dispute in a court action.

We follow the precedent set in *Gallo* and *Espinoza* to conclude that section 1281.97 neither prohibits nor discourages the formation of arbitration agreements.  Rather, the statute regulates the conduct of the parties to help "achieve the FAA's goal of 'safeguarding arbitration.' " (*Espinoza, supra,* 83 Cal.App.5th at p. 783.)  The rules are designed to encourage drafters of arbitration agreements to engage in arbitration promptly.  We observe that in the matter before us, as in *Espinoza* and *Gallo,* waiver and material breach do not automatically remove a matter from arbitration.  Instead, the employee is given the *option* of resolving the stagnant dispute in an action before the court.  This rule of procedure for the conduct of the arbitration proceeding is not preempted by the FAA.

11

DISPOSITION

A writ of mandate shall issue directing the superior court to vacate its May 19, 2023 order granting R&S's motion to compel compliance with the existing arbitration order and denying Suarez's motion to vacate the stay. The court shall then enter a new order granting Suarez's motion and denying the one filed by R&S.  The stay previously issued by this court on August 2, 2023 will dissolve upon finality of this opinion.  Suarez shall recover his costs in this writ proceeding.  He is also entitled to reasonable attorney's fees pursuant to section 1281.99 in an amount to be determined by the superior court.

DATO, J.

WE CONCUR:

O'ROURKE, Acting P. J.

DO, J.