UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANA MUSHARBASH,<br><br>Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE BANK,<br><br>Defendant. | No. 2:22-cv-02320-DAD-KJN<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DENYING DEFENDANT'S MOTION TO DISMISS ONE OF PLAINTIFF'S CLAIMS<br><br>(Doc. No. 11) |

This matter is before the court on defendant's motion to compel arbitration and to dismiss one of plaintiff's claims. (Doc. No. 11.) On June 30, 2023, the pending motion was taken under submission on the papers pursuant to Local Rule 230(g). (Doc. No. 14.) For the reasons explained below, the court will grant in part and deny in part defendant's motion to compel arbitration and deny defendant's motion to dismiss.

**BACKGROUND**

On September 12, 2022, plaintiff Rana Musharbash filed a complaint in Solano County Superior Court initiating this suit against her former employer defendant JPMorgan Chase Bank and unnamed Doe defendants 1–20, alleging that defendant discriminated against and harassed her and violated various California wage and hour laws. (Doc. No. 1-1 at 5.) On December 30, 2022, defendant removed the action to this federal court. (Doc. No. 1.)

1

1    In her complaint, plaintiff asserts the following twelve claims:  (1) failure to pay minimum wages in violation of California Labor Code § 1194; (2) failure to provide meal and rest breaks in violation of California Labor Code §§ 226.7, 512; (3) failure to provide accurate wage statements in violation of California Labor Code §§ 226, 1174; (4) failure to timely pay unpaid wages upon termination in violation of California Labor Code §§ 201, 202; (5) failure to pay overtime wages in violation of California Labor Code §§ 510, 1194; (6) failure to reimburse business expenses in violation California Labor Code § 2802; unfair competition in violation of California's Unfair Competition Law, §§ 17200, *et seq.* ("the UCL"); (8) civil penalties under the California Private Attorney General Act, California Labor Code §§ 2698, *et seq.* ("PAGA"); (9) discrimination in violation of California Government Code §§ 12900, *et seq.*; (10) harassment in violation of California Government Code §§ 12900, *et seq.*; (11) failure to take reasonable steps to prevent harassment in violation of California Government Code §§ 12900, *et seq.*; and (12) wrongful termination in violation of public policy.  (Doc. No. 1-1 at 12–22.)

As part of her employment, on April 4, 2017, plaintiff signed an arbitration agreement with defendant that required her to "submit employment-related disputes . . . to binding arbitration," including "claims of employment discrimination or harassment . . . failure to pay wages, bonuses, or other compensation, tortious acts, [or] wrongful, retaliatory and/or constructive discharge" ("the Agreement").  (Doc. No. 11-2 at 6–11.)  The Agreement states that "[a]rbitration under this Agreement shall be conducted before a single neutral arbitrator of the American Arbitration Association ('AAA') . . . in accordance with and selected pursuant to the rules and procedures of the Employment Arbitration Rules of the AAA . . . ."  (*Id.* at 8.)

On June 14, 2022, plaintiff notified defendant that she would be pursuing an employment arbitration with the AAA.  (*Id.* at 31.)  On July 8, 2022, plaintiff submitted her arbitration demand to the AAA to begin the process of arbitration ("the Demand").  (Doc. No. 12-1 at 6–7.)  In the section of the Demand asking plaintiff to "describe the nature of each claim" in detail, plaintiff wrote:

/////

/////

> Complainant was harassed because of complainant's race, ancestry, national origin, color. Complainant was discriminated against because of complainant's race, ancestry, national origin (includes language restrictions), color and as a result of the discrimination was terminated. Claimant was terminated for an alleged violation of policy but what was in actuality a pretext for illegal discrimination and in furtherance of Claimant's supervisor's discriminatory behavior exhibited toward Claimant throughout her employment.

(*Id.* at 6.) In the Demand, plaintiff listed an individual named Estefania Santarelli as defendant's representative. (*Id.*) Santarelli was defendant's employee[1]; she lived in Argentina during the relevant time period and her signature block in an email to plaintiff's counsel in May 2022 identified her as "Estefania A Santarelli, Legal and Compliance." (Doc. Nos. 11-3 at 3; 12-1 at 17.)

On July 18, 2022, the AAA emailed Santarelli and Lela Cetoute, who defendant employed as an executive administrative assistant[2] (Doc. Nos. 11-3 at 2; 12-1 at 2), providing them with an invoice for a $2,100 filing fee and notifying them that defendant's payment was due within 30 days, i.e., by August 17, 2022 (Doc. Nos. 11-2 at 22–24; 12-1 at 28). The AAA's email stressed that "the AAA cannot grant any extensions to this payment deadline unless agreed upon by all

/////

/////

/////

---

[1] In its pending motion, defendant argues at length that Santarelli was not defendant's employee and was employed instead by "J.P. Morgan Services Argentina S.R.L." (*See* Doc. No. 11-1 at 8, 12, 20, 21.) Defendant has also submitted an affidavit from a managing director in its human resources department averring that Santarelli was not employed by defendant. (*See* Doc. No. 11-3 at 3.) Defendant then reversed it position without explanation and referred to Santarelli as its employee throughout its reply brief submitted in support of its motion. (*See* Doc. No. 13 at 5, 6, 11–13.) Ultimately, resolution of the pending motion will not turn on the precise relationship of Santarelli to defendant. However, the court notes that defendant faults plaintiff for allegedly choosing the wrong person as defendant's representative (*see* Doc. Nos. 11-1 at 8, 12, 20, 21; 13 at 5, 6, 11–13) while seemingly being unable itself to discern who its own employees are.

[2] The AAA often added Cetoute to the recipient list for correspondence in arbitrations involving defendant. (Doc. No. 11-2 at 3.) Cetoute was on a leave of absence from work when the AAA emailed her the July 18, 2022 invoice and remained on leave until September 13, 2022. (Doc. No. 11-3 at 3.)

3

parties."³ (Doc. Nos. 11-2 at 23; 12-1 at 28.) On July 29, 2022, defendant's assistant general counsel, Jacob Marshall, emailed plaintiff's counsel to request a delay of an August 2, 2022 deadline in the arbitration. (Doc. Nos. 11-2 at 28; 12-1 at 20.) Plaintiff's counsel asked Marshall to clarify whether he was requesting an extension for the invoice payment or a different deadline; Marshall explained that he was only requesting an extension for "the response to arbitrator selection." (Doc. Nos. 11-2 at 28; 12-1 at 31.) Plaintiff's counsel assented to a two-week extension of this separate, non-invoice-related deadline. (Doc. No. 11-2 at 27.) The AAA emailed Santarelli and Cetoute again on August 2, 2022, reminding them the invoice payment was still due on August 17, 2022 and reiterating that "[t]he AAA cannot grant any extensions to this deadline." (Doc. No. 12-1 at 35.) On September 7, 2022, the AAA emailed defendant's attorneys, Di Addy Tang and Ethan Chernin, to inquire as to the status of the arbitration-related filing fee payment. (Doc. Nos. 11-2 at 58; 12-1 at 39.)

      The next day, September 8, 2022, plaintiff's counsel notified defendant and the AAA via email of plaintiff's intent to withdraw from arbitration on the grounds that defendant's non-payment constituted material breach of the arbitration agreement and that defendant's conduct violated California Code of Civil Procedure § 1281.97. (Doc. Nos. 11-2 at 57–58; 12-1 at 42); *see also* Cal. Civ. Proc. Code § 1281.97(a)(1) ("In an employment or consumer arbitration that requires . . . the drafting party to pay certain fees and costs before the arbitration can proceed, if the fees or costs to initiate an arbitration proceeding are not paid *within 30 days* after the due date the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel arbitration . . . .") (emphasis added). On September 9, 2022, defendant's counsel replied via email that plaintiff could not unilaterally withdraw because the arbitration agreement delegated to the arbitrator the decision as to whether non-payment

---

³ Payment of the filing fee to the AAA is due upon receipt, as of the date of the invoice. (Doc. No. 11-2 at 23.) California statutes therefore refer to the date of the invoice as the "due date." *See* Cal. Civ. Proc. Code §§ 1281.97, 1281.98. Despite this nomenclature, as relevant in this case, the AAA and California law provide defendant with 30 days before any consequences are imposed, such as waiver of the right to compel arbitration. *See* Cal. Civ. Proc. Code § 1281.97. Accordingly, the court will refer to the filing fee as being "due" on August 17, 2022, i.e., 30 days after what the statute refers to as the "due date" of July 18, 2022.

1 constituted material breach.  (Doc. No. 11-2 at 55.)  Defendant's counsel wrote in the same email
2 that the fee had been paid earlier that morning, Friday, September 9, 2022.  (*Id.*)  On the
3 following business day, Monday, September 12, 2022, the AAA emailed the parties that it was
4 construing plaintiff's counsel's email to be a request to withdraw and was terminating the matter
5 due to non-payment of fees.  (Doc. Nos. 11-2 at 60; 12-1 at 47.)  That same day, plaintiff filed her
6 complaint initiating this action in the Solano County Superior Court.  (Doc. No. 1.)

7       On May 5, 2023, defendant filed the pending motion to compel arbitration and to dismiss
8 plaintiff's non-individual representative PAGA claim.  (Doc. No. 11.)  Plaintiff filed her
9 opposition to the pending motion on May 16, 2023; defendant filed its reply thereto on May 26,
10 2023.  (Doc. Nos. 12, 13.)

## LEGAL STANDARD

12       A written provision in any contract evidencing a transaction involving commerce to settle
13 a dispute by arbitration is subject to the Federal Arbitration Act ("FAA").  9 U.S.C. § 2.  The
14 FAA confers on the parties involved the right to obtain a court order directing that arbitration
15 proceed in the manner provided for in a contract between them.  9 U.S.C. § 4.  In considering a
16 motion to compel arbitration, the "court's role under the Act . . . is limited to determining
17 (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement
18 encompasses the dispute at issue."  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126,
19 1130 (9th Cir. 2000).  The party seeking to compel arbitration bears the burden of proving by a
20 preponderance of the evidence the existence of an agreement to arbitrate.  *Ashbey v. Archstone*
21 *Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015); *Knutson v. Sirius XM Radio Inc.*, 771
22 F.3d 559, 565 (9th Cir. 2014) (citing *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 413
23 (1996)).  "Arbitration is a matter of contract, and the FAA requires courts to honor parties'
24 expectations."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351 (2011).  However, parties
25 may rely upon generally applicable contract defenses to invalidate an agreement to arbitrate.  *See*
26 *id*. at 339.

27       There is an "emphatic federal policy in favor of arbitral dispute resolution."  *Mitsubishi*
28 *Motors Corp. v. Soler Chrysler–Plymouth*, 473 U.S. 614, 631 (1985).  As such, "any doubts

concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* at 626 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). However, the Supreme Court has clarified that "the FAA's 'policy favoring arbitration' does not authorize federal courts to invent special, arbitration-preferring procedural rules." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022).

**ANALYSIS**

**A.     Whether the Agreement Covers Plaintiff's Non-Wage-and-Hour Claims 9–12**

As noted above, in her complaint, plaintiff brings claims against defendant for discrimination, harassment, failure to take reasonable steps to prevent harassment, and wrongful discriminatory termination (collectively, "claims 9 through 12"), which are not based on alleged violations of California's wage and hour laws.

In its pending motion, defendant argues that the Agreement is binding on plaintiff and requires the submission of all of her claims to arbitration. (Doc. No. 11 at 15–16, 23–27.) Defendant further argues that, even if it failed to comply with California Code of Civil Procedure § 1281.97, it has not waived its right to compel arbitration as to plaintiff's claims 9 through 12 for several reasons, including because § 1281.97 is preempted by the FAA. (Doc. No. 11-1 at 16–19.) In her opposition, plaintiff does not contest that the Agreement is binding and that it applies to each of her claims. Instead, she argues that defendant violated § 1281.97 by failing to pay the required filing fee within 30 days, thereby waiving its right to compel arbitration, and that FAA preemption does not apply. (Doc. No. 12 at 4–7.) The court need not address these arguments, however, because the evidence provided to the court in connection with the pending motion establishes that the motion to compel arbitration must be denied as to claims 9 through 12 for two independently sufficient reasons that are distinct from § 1281.97.[4] First, the AAA terminated the

---

[4] Nevertheless, the court notes that the majority of courts to consider the issue have held that the FAA does not preempt § 1281.97. *See Nyerges v. Pac Sunwear of Cal., LLC*, 21-cv-01123-CJC-DFM, 2022 WL 20717551 (C.D. Cal. July 6, 2022) (holding that the FAA does not preempt § 1281.97); *Gallo v. Wood Ranch USA, Inc.*, 81 Cal. App. 5th 621, 635–47 (2022) (same); *Espinoza v. Superior Ct.*, 83 Cal. App. 5th 761, 778–87 (2022) (same); *Costa v. Melikov*, No. 20-cv-09467-AB-AS, 2022 WL 18228248, at *4 (C.D. Cal. Oct. 21, 2022) (same); *Suarez v. Superior Ct. of San Diego Cnty.*, 99 Cal. App. 5th 32, 317 Cal. Rptr. 3d 591, 597–98 (2024)

1   arbitration.  Second, defendant waived its right to compel arbitration by failing to pay the filing
2   fee despite repeated reminders from the AAA.

          1.        AAA Termination

"Courts have consistently held that termination by the AAA allows for the cases to return to district court."  *Lee v. Citigroup Corp. Holdings, Inc.*, __ F. Supp. 3d __, 2023 WL 6053849, at *3 (N.D. Cal. 2023).  "[C]ourts often defer greatly to the AAA on such matters."  *Id.*

Here, the AAA sent an invoice for payment to defendant's employees on July 18, 2022 stating that the filing fee needed to be paid within 30 days to initiate the arbitration; plaintiff's counsel expressly referenced the invoice payment deadline in an email that defendant's assistant general counsel received and responded to; and the AAA issued a reminder of the deadline to defendant's employees on August 2, 2022.  On September 7, 2022, seven weeks after the AAA emailed the invoice to defendant's employees, five weeks after Marshall responded to the email discussing the invoice payment, and three weeks after the invoice payment deadline had passed, the AAA emailed defendant's counsel to issue yet another reminder of the invoice.  Only after these repeated reminders and attempts to secure payment did plaintiff request termination of the arbitration, which the AAA promptly granted.

At least one district court has denied a defendant's motion to compel arbitration in almost identical circumstances.  *See Lee*, 2023 WL 6053849, at *1–3 (denying the defendant's motion to compel arbitration where the AAA sent an invoice to the defendant in August 2022, issued a reminder of the invoice to the defendant in September 2022, and then terminated the arbitration later in September 2022 after the defendant failed to pay by the 30-day deadline).  The district court in that case noted that it "cannot find . . . any cases finding that the AAA is not permitted to enforce payment schedules it deems appropriate or any basis to set aside a termination by the

---

(same).  Only two courts have held to the contrary.  *See Belyea v. GreenSky, Inc.*, 637 F. Supp. 3d 745, 756 (N.D. Cal. 2022) ("[E]very court considering the issue to date has found that the FAA does not preempt [§] 1281.97.  Respectfully, the Court disagrees.") (internal citations omitted); *Lee v. Citigroup Corp. Holdings, Inc.*, No. 22-cv-02718-SK, 2023 WL 6132959, at *2 (N.D. Cal. Aug. 29, 2023) (adopting the reasoning of the district court's decision in *Belyea*).  While the court is skeptical that FAA preemption applies here, ultimately it need not—and therefore does not—decide the issue.

7

AAA." *Id.* at *3. Notably here, defendant has not identified any such cases either. Accordingly, defendant's motion to compel arbitration will be denied as to plaintiff's claims 9 through 12. *See id.* at *3 (denying the defendant's motion to compel arbitration even though "the AAA's 30-day policy was premised on" § 1281.97, which the court held was preempted by the FAA); *Eliasieh v. Legally Mine, LLC*, No. 18-cv-03622-JSC, 2020 WL 1929244, at *4 (N.D. Cal. Apr. 21, 2020) ("The bottom line is that AAA terminated the arbitration due to defendant's conduct. Under well-settled caselaw and the AAA's own rules, the termination of the arbitration due to defendant's non-payment of fees means that plaintiff can pursue his claims in court."); *cf. Sink v. Aden Enters., Inc.*, 352 F.3d 1197, 1199–1200 (9th Cir. 2003) (affirming the district court's conclusion that the defendant defaulted in the arbitration where the defendant was required under the arbitration contract to pay the costs of arbitration by a certain date, "received multiple notices that the costs were due by this date . . . did not pay these costs by" that date, and "did not present any evidence that at the time payment was due in the arbitration, [the defendant had] made genuine efforts to make alternate payment arrangements").

2. <u>Waiver of the Right to Compel Arbitration</u>

Defendant's motion to compel arbitration must also be denied as to claims 9 through 12 because defendant waived its right to arbitrate those claims by failing to timely pay the filing fee. "[A] party waives its right to compel arbitration when (1) it has knowledge of the right, and (2) it acts inconsistently with that right." *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 460 (9th Cir. 2023). Defendant "was aware of its right to compel arbitration because it drafted the Arbitration Agreement," *Lee*, 2023 WL 6053849, at *4, because it was in the process of actually arbitrating the claims, and because it invoked that right in an email to plaintiff's counsel (*see* Doc. No. 11-2 at 55). Defendant also acted inconsistently with that right to arbitrate by failing to pay the filing fee required to initiate the arbitration for nearly two months. Accordingly, defendant waived its right to arbitrate and the pending motion will be denied as to as to claims 9 through 12. *See Lee*, 2023 WL 6053849, at *4 (holding that the defendant's "delayed action serves as waiver of its right to arbitrate" where the defendant "failed to [] pay its filing fee in a timely manner, despite receiving a reminder from the AAA regarding this fee"); *cf. Brown v. Dillard's, Inc.*, 430 F.3d

8

1004, 1012 (9th Cir. 2005) ("The American Arbitration Association could not compel [the defendant] to pay its share of the filing fee, and in the absence of the fee it could not proceed. [The plaintiff] had no choice but to come to court. . . . [W]hen an employer enters into an agreement requiring its employees to arbitrate, it must participate in the process or lose its right to arbitrate.").

**B.      Whether the Agreement Covers Plaintiff's Wage-and-Hour Claims 1–7**

In her complaint, plaintiff also brings various individual (non-PAGA) wage and hour claims against defendant (collectively, "claims 1 through 7").[5] (Doc. No. 1.) Defendant argues that any waiver of its right to compel arbitration is limited to the claims described in plaintiff's arbitration demand, namely claims 9 through 12. (Doc. No. 11-1 at 22–23.) Defendant argues that plaintiff must still arbitrate claims 1 through 7, which bear no relation to the complaints plaintiff described in the Demand. (*Id.*) Plaintiff does not respond to the arguments advanced by defendant in this regard.

As discussed above, waiver of the right to compel arbitration requires "the intentional relinquishment or abandonment of a known right." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022) (citation omitted). Plaintiff's Demand states that she was harassed, discriminated against, and terminated. (Doc. No. 11-2 at 13–14.) The Demand itself provided no indication that plaintiff would, or even could, also assert claims 1 through 7. Defendant cannot be said to have "known" that it could compel arbitration on claims that it did not even know existed. *Morgan*, 596 U.S. at 417. Plaintiff provides no explanation or argument to the contrary.[6] In the absence of any argument from plaintiff on this point, the court cannot find that defendant's waiver and the

---

[5] Specifically, those claims are for: failure to pay minimum wages; failure to provide meal and rest breaks; failure to provide accurate wage statements; failure to timely pay all unpaid wages upon termination; failure to pay overtime wages; failure to reimburse business expenses; and unfair competition in violation of the UCL. (Doc. No. 1.)

[6] Any argument by plaintiff that defendant waived its right to compel arbitration as to her claims 1 through 7 because it failed to pay the filing fee as required by § 1281.97 would also be unavailing. That statute only permits the employee to "[w]ithdraw *the claim* from arbitration and proceed in a court of appropriate jurisdiction." Cal. Civ. Proc. Code § 1281.97(b)(1) (emphasis added). It does not exempt the employee from the arbitration of all other claims that may arise against the same defendant.

1  AAA's termination of an arbitration centered solely on alleged claims of discrimination are
2  sufficient to nullify the entire Agreement with respect to any other claims that might be brought
3  in the future.  Accordingly, defendant's motion to compel arbitration as to plaintiff's claims 1
4  through 7 will be granted.  Because defendant requests that the court stay proceedings in this
5  action as to those claims pending the resolution of the arbitration, the court will do so.  (*See* Doc.
6  No. 11-1 at 31–32); *see also* 9 U.S.C. § 3 ("[T]he court . . . shall on application of one of the
7  parties stay the trial of the action until such arbitration has been had . . . .").

### C. Individual PAGA Claim

Defendant argues that plaintiff's individual PAGA claim (claim 8, in part) must be compelled to arbitration for the same reason that claims 1 through 7 are subject to arbitration. (Doc. No. 11-1 at 22–23, 27–29.)  Plaintiff again does not address this argument in her opposition.  Because plaintiff's individual PAGA claim arises from the same underlying conduct as do claims 1 through 7, the court concludes there is no evidence of defendant's "intentional relinquishment or abandonment of [its] known right" to compel arbitration as to that claim. *Morgan*, 596 U.S. at 417.  Accordingly, defendant's motion to compel arbitration will be granted as to plaintiff's individual PAGA claim.  Because defendant also requests that the court stay proceedings in this action as to this claim as well, pending the resolution of the arbitration, the court will do so.  (*See* Doc. No. 11-1 at 31–32); *see also* 9 U.S.C. § 3.

### D. Non-Individual Representative PAGA Claim

Defendant argues that once plaintiff's individual PAGA claim is compelled to arbitration, plaintiff's representative PAGA claim (claim 8, in part) must be dismissed due to lack of standing.  (Doc. No. 11-1 at 29–31.)  However, shortly after defendant filed its motion, the California Supreme Court squarely rejected this argument.  *See Adolph v. Uber Techs., Inc.*, 14 Cal. 5th 1104 (2023).  After the court's decision in *Adolph*, other district courts in California have concluded that plaintiffs retain standing to pursue representative PAGA claims in federal court even when their individual PAGA claims have been ordered to arbitration.  *See Josephson v. Lamon Constr. Co., Inc.*, No. 2:23-cv-00043-DAD-AC, 2024 WL 382378, at *3 (E.D. Cal. Jan. 31, 2024) (collecting cases).  These courts have also adopted the procedure, suggested by the

court in *Adolph*, of staying proceedings on the representative PAGA claims pending the outcome of the arbitration. *See id.*

Accordingly, the court will stay this action as to plaintiff's representative PAGA claim pending the outcome of the arbitration, in line with the decision of the California Supreme Court in *Adolph*. *See id.*; *see also Johnson v. Lowe's Home Ctrs., LLC*, __ F.4th __, 2024 WL 542830, at *2 (9th Cir. Feb. 12, 2024) (remanding the plaintiff's representative PAGA claims "to allow the district court to apply California law as interpreted in *Adolph*"). In light of the court's conclusion in this regard, the court will also deny defendant's motion to dismiss.

## CONCLUSION

For the reasons explained above,

1. Defendant's motion to compel arbitration (Doc. No. 11) is granted in part and denied in part as follows:

    a. Defendant's motion to compel arbitration is granted as to plaintiff's claims brought against it for failure to pay minimum wages (claim 1), failure to provide meal and rest breaks (claim 2), failure to provide accurate wage statements (claim 3), failure to timely pay all unpaid wages upon termination (claim 4), failure to pay overtime wages (claim 5), failure to reimburse business expenses (claim 6), unfair competition in violation of the UCL (claim 7), and civil penalties pursuant to her individual PAGA claim (claim 8, in part); and

    b. Defendant's motion to compel arbitration is denied as to plaintiff's claims brought against it for discrimination (claim 9), harassment (claim 10), failure to take reasonable steps to prevent harassment (claim 11), and wrongful termination (claim 12);

2. Defendant's motion to dismiss plaintiff's non-individual representative PAGA claim (claim 8, in part) is denied;

3. Proceedings in this action as to claims 1 through 8 are stayed pending resolution of the arbitration proceedings as to those claims;

11

4. Within fourteen (14) days of the issuance of the arbitrator's decision, the parties shall file a joint status report to inform the court of the arbitrator's decision and how the parties intend to proceed with regard to the claims that have been stayed; and

5. The case is referred to the assigned magistrate judge for the setting of an Initial Scheduling Conference and the issuance of a scheduling order, beginning with setting a deadline for defendant to answer the complaint as to claims 9 through 12.

IT IS SO ORDERED.

Dated: **February 29, 2024**

DALE A. DROZD
UNITED STATES DISTRICT JUDGE